IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DARLENE HALL for D.T.J., ) | CASE NO. 1:14-CV-00057 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| CAROLYN W. COLVIN, ) | |
|     Acting Commissioner of Social ) | |
|     Security, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. | |

    Plaintiff, Darlene Hall ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Commissioner of Social Security ("the Commissioner"), denying the application of Plaintiff's son, D.T.J. ("Claimant"), for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. ("the Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

I.    PROCEDURAL HISTORY

    On April 30, 2011, Plaintiff filed an application for SSI on behalf of Claimant, alleging a disability onset date of May 4, 2010.  (Transcript ("Tr.") 18.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Id.)  On July 11, 2012, an ALJ conducted Claimant's hearing.  (Id.)  Claimant participated in the hearing and was represented by an attorney.  (Id.)  Plaintiff also testified at the hearing.  (Id.)  On September 26, 2012, the ALJ found Claimant not disabled.  (Tr. 15.)  On November 7, 2013, the Appeals Council declined to

review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On January 9, 2012, Plaintiff filed a complaint on behalf of Claimant challenging the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 14, 16.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in discounting the opinion of Ms. Smith, Claimant's teacher; and (2) the ALJ erred in finding that Claimant did not meet or functionally equal a listed impairment.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Claimant was born in February 1999 and was a school-age child on the date his application for SSI was filed. (Tr. 21.) Claimant had not engaged in substantial gainful activity since April 30, 2011, the application date. (*Id.*)

### B. Medical Evidence and School Reports

Psychiatric treatment notes from January 27, 2011, indicate that Claimant was being teased about his weight, bullied his peers, had low self-esteem, and was having problems in school. (Tr. 394.) Claimant reportedly was not prepared for class, performed below expectations, disrupted class, and had anger issues. (*Id.*) Claimant was diagnosed with disruptive behavior disorder, not otherwise specified (NOS). (Tr. 404.)

In February 2011, Valarie Gortmaker, Ph.D., a psychologist, evaluated Claimant's functionality. (Tr. 436-456.) During the evaluation, Claimant frequently made negative comments about his work, such as, "I hate this crap"; "My drawing is gay"; "I don't like this exercise"; "That looks dumb"; "That looks ugly"; "It sucks;" and "I can't do this." (Tr. 437.)

He displayed a flat affect throughout most of the session and was frequently worried when the examiner wrote down information, asking what was written down and if his mother would find out.  (*Id.*)  The Weschler Intelligence Scale for Children-Fourth Edition ("WISC-IV") test was administered.[1]  Claimant achieved a full-scale IQ score of 75, which fell in the Borderline range, suggesting that Claimant would score the same as or better than 5% of children his age.  (Tr. 438.)  Claimant's personality profile suggested that he likely had extended periods of dejection, scattered with episodes of sociability, followed by withdrawn isolation and sorrowfulness.  (Tr. 445.)  Dr. Gortmaker diagnosed generalized anxiety disorder, depressive disorder NOS, mathematics disorder, and disorder of written language.  (Tr. 446.)  Claimant was assigned a Global Assessment of Functioning (GAF) score of 50.[2]

On April 28, 2011,Toby Bourisseau, CNS, performed a psychiatric evaluation of Claimant.  (Tr. 389-393.)  Claimant's mother reported that Claimant had a history of attention deficit hyperactivity disorder (ADHD) and social anxiety symptoms.  (Tr. 392.)  Claimant stated that he normally felt irritated and did not want to be around people, although he did have some friends that he liked.  (Tr. 389.)  Claimant stated that he worried about: death; not having money to do things he wanted to do; that he will stay short; his mother; and being beat up.  (Tr. 389-390.)  He indicated that he had nightmares

---

[1] "The WISC-IV is an individually administered, comprehensive clinical instrument for assessing the intelligence of children ages 6 years 0 months through 16 years 11 months."  (Tr. 437.)

[2] The GAF scale incorporates an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health illness devised by the American Psychiatric Association.  A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.

sometimes and became scared at night. (Tr. 390.) Claimant's mother reported that Claimant made comments that he understood why kids kill themselves when they are being bullied or teased. (Tr. 389.) She also stated that Claimant had a smart mouth, was disrespectful toward teachers, had outbursts when told to do something, and would go to his room and slam the door when he became angry. (Tr. 390.) Claimant's diagnosis included ADHD, combined type; depression NOS; generalized anxiety disorder (GAD); math disorder per psychiatric testing; and disorder of written language per psychiatric testing. (Tr. 392.) Claimant had a GAF score of 55.[3] (*Id.*)

On May 5, 2011, Alexander Namrow, M.D., diagnosed Claimant with attention deficit disorder without hyperactivity. (Tr. 331-332.)

At a counseling session on May 9, 2011, Claimant's mother reported that Claimant's mood had been okay for the past few weeks, but that he still had anxiety. (Tr. 410.) On exam, Claimant was somewhat restless and had trouble sitting down and focusing during the session. (*Id.*) His thought process was clear, and he denied having any worries. (*Id.*) Claimant was diagnosed with ADHD combined type, GAD, and depression. (*Id.*)

On June 10, 2011, Claimant's mother reported that Adderall was helping somewhat and that Claimant's grades were improving. (Tr. 351.) Claimant reported that he "hated everything and everyone." (*Id.*) He stated that he got a job at a barber shop sweeping the floor. (*Id.*) Claimant was prescribed Prozac. (*Id.*) On June 28, 2011, Claimant and his mother reported that the Prozac had been helping and that Claimant was not as moody as

---

[3]  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

he had been in the past. (Tr. 350.) Claimant denied having any worries and was eating and sleeping ok. (*Id.*) His mother stated that he had been doing well with his behavior at home. (*Id.*)

On September 21, 2011, Kwyn Moffitt, a speech pathologist, administered a series of speech language tests to Claimant. (Tr. 338.) At that time, it was noted that Claimant used Fluoxetine, Adderall, Albuterol, and Singulair on a daily basis. (*Id.*) Claimant's age-based standardized language scores were scattered. (*Id.*) His articulation fell within normal limits, but his core language scores were severely impaired. (Tr. 339.) Claimant's prognosis was good as long as he attended speech therapy class. (*Id.*)

Counseling notes from September 27, 2011, state that Claimant had made some improvements with his behavior at school and his communication with his mother, but that he still struggled with his anger, had problems sleeping, had poor boundaries, and had poor self-esteem. (Tr. 348.)

On November 3, 2011, Dr. Namrow diagnosed Claimant with extrinsic asthma with acute exacerbation and attention deficit disorder (ADD) with hyperactivity. (Tr. 364.)

Claimant attended a therapy visit with Bilquis F. Khan, M.D., on December 7, 2011. (Tr. 381.) Claimant's mother reported that Claimant had talked about wanting to kill himself and/or do harm to others. (*Id.*) On examination, Claimant was oriented in person, place, time, and situation. (Tr. 382.) His speech and affect were appropriate. (*Id.*) His mood was depressed, but his behavior and psychomotor findings were unremarkable. (*Id.*) His memory was intact and he had average intellect; his attitude was cooperative; his reasoning, judgment, and insight were fair; impulse control was good; self-perception was realistic; and thought content was unremarkable. (*Id.*) Claimant did not express suicidal

or homicidal ideation. (*Id.*) Dr. Khan recommended that Claimant see a psychiatrist. (*Id.*)

Between September 2011 and February 2012, school notes indicate that Claimant had on-going disruptive behavior and an inability to attend and complete tasks. (Tr. 427-432.) Eleanor Gottesman, M.D., noted in psychiatric progress notes from March 27, 2012, that Claimant had been suspended for five days for making threats. (Tr. 510.) The notes further indicated that Claimant's medications were not given regularly, his sleep was poor, and that he had been a bit less worried. (*Id.*)

In April 2012, Claimant received an Individualized Education Program (IEP) to address his academic and behavioral issues. (Tr. 282-295.) The IEP noted that Claimant had trouble completing assignments, but that since he had been taking Concerta he had become more focused and had been trying to complete his assignments. (Tr. 287.) The IEP also noted that Claimant's test scores had improved. (Tr. 284.) Claimant had an exceptional understanding of vocabulary and was able to compare and contrast vocabulary terms, use higher level vocabulary when speaking, and could comprehend and use multiple meaning words. (*Id.*) Claimant's scores fell within the average range and his receptive and expressive language abilities in the area of semantics were a strength for him. (*Id.*) He was no longer required to attend speech therapy services. (*Id.*)

In April 2012, Kristen Smith, Claimant's seventh grade teacher and intervention specialist, provided an assessment of Claimant's functioning. (Tr. 494-501.) Ms. Smith opined that Claimant had obvious to serious problems with acquiring and using information; serious to very serious problems attending and completing tasks; obvious to very serious problems interacting and relating to others; and some serious to very serious problems caring for himself. (Tr. 494-499.) Ms. Smith noted that Claimant had difficulty

6

staying focused, remaining on task, and completing his homework. (Tr. 495-496.) She also noted that Claimant had been removed from class and had been given a time out due to his behavior. (Tr. 497.) Ms. Smith opined that Claimant had difficulties handling frustration and that he often became disruptive or shut down. (Tr. 499.) She indicated that Claimant did not function well without his medications. (Tr. 501.)

A treatment note from May 2012 indicated that Claimant was doing "very well" with Concerta. (Tr. 508.) Claimant was getting schoolwork done and his grades were improving. (*Id.*)

### C. Agency Reports and Assessments

On June 3, 2011, state agency psychologist Vicki Warren, Ph.D., opined that Claimant had a marked limitation in the domain of acquiring and using information. (Tr. 86.) On October 3, 2011, Lisa Lynch, M.A., C.C.C./S.L.P., and Teresita Cruz, M.D., opined the same. (*Id.*) The aforementioned professionals opined that Claimant did not meet or equal a listing. (Tr. 87.)

In January 2012, Bruce Goldsmith, Ph.D., Melissa Hall, M.A., and Rachel Rosenfeld, M.D., reviewed Claimant's record and concluded that Claimant did not meet or functionally equal a listing. (Tr. 97-98.)

### D. Hearing Testimony

#### 1. Claimant's Hearing Testimony

Claimant testified that he lived with his mother, step-dad, and niece, but occasionally spent time visiting his three older brothers. (Tr. 39, 42.) Claimant stated that he was 13-years-old and would be entering the eighth grade. (Tr. 45.) He stated that he did "horrible" in school but that his grades improved in the fourth quarter. (*Id.*) He testified

7

that his medicine helped him focus more and improve in school.  (Tr. 46.)  Claimant testified that he had taken karate classes.  (Tr. 48.)  He stated that he had chores at home like taking out the garbage, washing dishes, and cleaning his room, but that he was not good at doing them.  (Tr. 50.)  Claimant testified that he wanted to go to college and become a scientist because he liked plants.  (Tr. 56-57.)

### 2.     Plaintiff's Hearing Testimony

Plaintiff, Claimant's mother, testified at the hearing.  She stated that contrary to Claimant's testimony, Claimant had gotten into trouble at school and was suspended for threatening to kill someone.  (Tr. 59.)  She testified that he threatened to harm himself about every week, and that he did not have any friends because he thought that everyone was out to get him.  (Tr. 61.)  Claimant saw a psychiatrist and went to counseling.  (Tr. 65.)  Plaintiff testified that she believed her son was disabled because "without his medication, he cannot function."  (Tr. 67.)  She stated that with his medication, "he's doing much better," although "he's not 100 percent."  (*Id.*)

### III.    STANDARD FOR DISABILITY

An individual under the age of 18 shall be considered disabled if he has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last, for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(C)(i); *Miller ex rel. Devine v. Comm'r of Soc. Sec.*, 37 F. App'x 146, 147 (6th Cir. 2002) (per curiam).  There is a three-step analysis for determining whether a child-claimant is disabled.  First, the Commissioner must determine whether the child is engaged in substantial gainful activity.  See 20 C.F.R. § 416.924(a); *Miller ex rel. Devine,*

37 F. App'x at 148. Second, if the child is not engaged in substantial gainful activity, the Commissioner must determine whether the child suffers impairments or a combination of impairments that are "severe" and that are expected to result in death or have lasted or are expected to last for a continuous period of not less than 12 months. See 20 C.F.R. § 416.924(a); Miller ex rel. Devine, 37 F. App'x at 148. Third, if the child suffers a severe impairment or combination of impairments that meet the Act's durational requirement, the Commissioner must determine whether they meet, medically equal, or functionally equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R. § 416.924(a); Miller ex rel. Devine, 37 F. App'x at 148. If the child's severe impairment or combination of impairments meets, medically equals, or functionally equals an impairment in the Listings, the child will be found disabled. See 20 C.F.R. § 416.924(a); Miller ex rel. Devine, 37 F. App'x at 148.

To determine whether a child's impairment functionally equals the Listings, the Commissioner assesses the functional limitations caused by the impairment in six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a. An impairment functionally equals the Listings if the child has a "marked" limitation in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant was born in February 1999. Therefore, he was a school-age child on April 30, 2011, the date the application was filed, and is currently an adolescent.

2. The claimant has not engaged in substantial gainful activity since April 30, 2011, the application date.

3. The claimant has the following severe impairments: Attention Deficit Hyperactivity Disorder (ADHD) and asthma.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings.

6. The claimant has not been disabled, as defined in the Social Security Act, since April 30, 2011, the date the application was filed.

(Tr. 21-30.)

### V. LAW & ANALYSIS

#### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). Courts may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether that evidence has actually been cited by the ALJ. *Id.* However, courts do not review the evidence *de novo*, make credibility determinations, or weigh the evidence.

*Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.

**B.     Plaintiff's Assignments of Error**

**1.     The ALJ Erred in Discounting the Opinion of Ms. Smith, Claimant's Teacher.**

Plaintiff argues that the ALJ erred in evaluating the April 2012 opinion of Kristen Smith, Claimant's seventh grade teacher and intervention specialist.  The ALJ gave little weight to Ms. Smith's opinion, explaining:

> The claimant's teacher, Kristen Smith reported obvious to serious problems with acquiring and using information, indicating difficulties staying focused or on task.  She reported serious to very serious problems attending and completing tasks.  She reported serious to very serious problems interacting and relating to others.  She stated that he has been removed from class and has been given a time out due to his behavior.  She stated that he has serious problems caring for himself or others, due to difficulties handling frustration and becoming disruptive or shutting down (12F/7).  She indicated that the claimant does not function well without his medications (12F/9).  This assessment is given little weight, as it is dated April 23, 2012, which is prior to him being started on medications, which have shown to provide a significant improvement in his mood, focusing, and attention.  Records reflect improvements in his grades.

(Tr. 23.)  According to Plaintiff, the ALJ erred in assigning little weight to Ms. Smith's opinion, as the opinion is supported by the record and shows that Claimant has marked

11

limitations in the functional domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for self.

Social Security Ruling 06-3p explains that opinions and other evidence from educational personnel are relevant to the ALJ's determination of a claimant's RFC:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03P, *6 (S.S.A Aug. 9, 2006). Furthermore, Social Security Ruling 06-3p provides that when evaluating opinion evidence from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity, certain factors should be considered,[4] such as:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

Id. at *4-5.

---

[4] Not every factor for weighing evidence will apply in every case. SSR 06-03P, *5 (S.S.A. Aug. 9, 2006).

12

Here, as the Commissioner concedes in her Brief, the ALJ was incorrect in stating that Ms. Smith's opinion was rendered prior to Claimant being started on medications. Indeed, the ALJ acknowledged that Claimant used medication and had good compliance with Prozac, Adderall, and Fluoxetine prior to April 2012. (Tr. 23.) Despite his misstatement regarding Claimant's use of medication, however, the Court finds no error in the ALJ's analysis of Ms. Smith's opinion, as the Court is capable of conducting a meaningful review of the ALJ's decision. First, although Claimant was using medication at the time of Ms. Smith's evaluation in April 2012, there is evidence in the record to support the ALJ's conclusion that there was a significant improvement in Claimant's mood, focus, and attention subsequent to Ms. Smith's evaluation. For example, the ALJ stated that on March 27, 2012–prior to Ms. Smith's evaluation–it was noted that Claimant's medications were not being given regularly (tr. 23, 510), but on May 2, 2012–after Ms. Smith rendered her opinion–Claimant's teacher reported that Claimant was getting his work done and his grades were improving (tr. 508, 23). Furthermore, at Claimant's administrative hearing in July 2012, Claimant testified that his medicine helped him focus more and improve in school. (Tr. 46.) He noted that his grades improved in the fourth quarter because he was taking his medication. (*Id.*) Claimant's mother testified that Claimant could not function without his medication, but was doing much better with it. (Tr. 67.)

Moreover, as the Commissioner notes in her Brief on the Merits, even if the ALJ's assessment of Ms. Smith's opinion was erroneous, the error would be harmless, as the ALJ's decision to assign little weight to Ms. Smith's opinion is supported by substantial evidence. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might

13

lead to a different result."  *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)).  *See also Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (When "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.") (quoting *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766, n.6 (1969)).  For example, in evaluating Claimant's case, the ALJ discussed the following evidence which supports the ALJ's decision to reject Ms. Smith's extreme opinion regarding Claimant's capabilities:

- "The records do reflect talk about hurting himself or others, irritability, and worrying (14F/9).  However, records reflect improved mood and good attention span with medications (7F/5).  His mother also indicated that he has started to focus a little better on medication."  (Tr. 22.)

- "On August 11, 2011, [Claimant's] mother reported that he was doing very well and was not moody or worried.  She indicated that he had been doing very well with his behavior at home and was eating and sleeping ok.  He was taking his medication as prescribed, with no side effects.  Mental status examination was entirely normal."  (Tr. 23.)

- "On mental status on December 7, 2011, [Claimant] was oriented [to] person, place, time and situation.  His speech and affect were appropriate. His mood was depressed. Behavior and psychomotor were unremarkable.  Memory was intact.  He had average intellect, his attitude was cooperative, his reasoning, judgment and insight were fair, impulse control was good, self-perception was realistic, thought content was unremarkable."  (Tr. 23.)

- "[O]n June 10, 2011, Alex Namrow, MD, who has treated the claimant since May 2003 did not indicate any limitations in the claimant's regular activities due to his impairments of ADHD, overweight, asthma, and learning disability."  (Tr. 23.)  The ALJ further noted that in January 2012, Dr. Namrow noted good compliance and effectiveness on all medications including Fluoxetine and Adderall.  (*Id.*)

- The state agency consultants opined that Claimant had less than marked limitations in acquiring and using information, attending and completing

14

> tasks, interacting and relating to others, and health and physical well-being and no limitations in the other areas. (Tr. 24.)

- "On May 2, 2012, [Claimant's] teacher reported that he was now getting his work done, and his grades were improving. He was sleeping fine with Clonidine. He was less irritable. He was doing well with 54 mg Concerta (14F/1)." (Tr. 25.)

- The ALJ noted that Claimant was able to pay attention to play video games and watch TV, and that he played sports including basketball and football. (Tr. 26.)

- Claimant had friends, got along with adults, and played team sports. (Tr. 27.)

A review of the ALJ's decision indicates that he properly considered the relevant evidence of record, including the opinion of Ms. Smith. The ALJ explicitly acknowledged Ms. Smith's relationship with Claimant and explained why he assigned little weight to Ms. Smith's opinion. Despite the ALJ's misstatement that Ms. Smith's evaluation occurred prior to Claimant's use of medication, this Court is able to determine that the ALJ at least considered the relevant evidence from Ms. Smith in assessing Plaintiff's RFC, and that substantial evidence in the record supports the ALJ's conclusion that Claimant's condition was not as severe as Ms. Smith opined. Because Ms. Smith, a teacher, is not an "acceptable medical source," the ALJ had no burden to provide good reasons for rejecting Ms. Smith's opinion or elaborate upon his decision to assign the opinion little weight. For these reasons, the ALJ's treatment of Ms. Smith's opinion is, at most, harmless error.

### 2. The ALJ Erred in Finding That Claimant Did Not Meet or Functionally Equal a Listed Impairment.

In determining whether the ALJ's factual findings are supported by substantial

15

evidence, courts must examine the evidence in the record taken as a whole and take into account whatever in the record fairly detracts from its weight.  See Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992).  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  Ealy, 594 F.3d at 512.  Here, Plaintiff argues that, in analyzing the domains of functioning, the ALJ provided inadequate reasoning and support for his finding that Claimant had less than marked limitations in the areas of acquiring and using information, attending and completing tasks, and interacting and relating with others, and no limitations in the area of caring for self.

   Plaintiff's argument is not well taken, as substantial evidence supports the ALJ's conclusion that Claimant did not have a marked impairment in any of the six domains.  Notably, the ALJ's conclusion that Claimant did not meet or functionally equal a listing is supported by the opinions of six state agency consultants: Vicki Warren, Ph.D.; Lisa Lynch, M.A., C.C.C./S.L.P.; Teresita Cruz, M.D.; Bruce Goldsmith, Ph.D.; Melissa Hall, M.A.; and Rachel Rosenfeld, M.D.  (Tr. 86-87, 97-98.)  "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i). The opinions of a state agency reviewing psychologist constitute expert medical opinion evidence and may constitute substantial evidence when they are supported by the record.  See S.S.R. 96-6P, 1996 WL 374180, at *1 (S.S.A.); Senters v. Sec'y of Health & Human Servs., 960 F.2d 150 (Table), 1992 WL 78102, at *3 (6th Cir. Apr. 17, 1992) (citing Loy v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1308-09 (6th

16

Cir. 1990) (per curiam)). The professionals listed above did not merely find that Claimant did not functionally equal a listing without offering any basis for their opinions. The record shows that in rendering their opinions, they considered, among other things: Claimant's IQ scores; results of speech and language testing;[5] school records indicating that Claimant threatened to harm himself and others and made negative self-statements; depression and anxiety inventories showing clinically significant scores; Claimant's asthma and occasional Albuterol use; and reports from Claimant's mother that Claimant had no friends. (Tr. 86-87, 97-98.)

Furthermore, as the Commissioner notes in her Brief, all six of the state agency consultants rendered their opinions prior to May 2012, when treatment notes indicate that Claimant was getting his schoolwork done and that his mood as well as his grades were improving. (Tr. 508.) Claimant testified in July 2012 that his grades improved during the fourth quarter because he was taking his medication, which helped him focus. (Tr. 46.)

---

[5] In June and October 2011, State agency consultants Vicki Warren, Ph.D., Lisa Lynch, M.A., C.C.C./S.L.P., and Teresita Cruz, M.D., opined that although Claimant's impairments did not functionally equal a listing, Claimant had a marked limitation in acquiring and using information. (Tr. 86.) The consultants based their opinions on Claimant's borderline IQ and "recent speech/language ce-core lang 69 on the CELF-4. Language is marked." (Tr. 86.) Indeed, Plaintiff relies heavily on Claimant's September 2011 speech pathology report to show that Claimant had marked limitations in acquiring and using information. The report, however, notes that Claimant's prognosis for improved speech skills was good with continued speech therapy. (Tr. 339.) December 2011 notes from Claimant's IEP indicate that Claimant no longer required speech-language therapy services. (Tr. 284.) When state agency consultants Bruce Goldsmith, Ph.D., Melissa Hall, M.A., and Rachel Rosenfeld, M.D., rendered their opinions in early 2012, they opined that Claimant had a less than marked limitation in acquiring and using information, as well as in the remaining domains. (Tr. 96.)

Plaintiff has failed to show that Claimant's condition worsened after the state agency consultants rendered their opinions.

The regulations state that "[n]o single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain." 20 C.F.R. § 416.926a(e)(4)(I).  In this case, the ALJ made it clear that in determining Claimant's ability to function, he considered the opinion of Claimant's teacher, Ms. Smith, as well as the speech language evaluation from September 2011, testimony from Claimant and his mother, school records, and treatment records.  (Tr. 21-30.)  Although Plaintiff has presented evidence in the record that Claimant struggled with behavioral and academic issues, remand of this case would not be necessary, as the ALJ's conclusion is supported by substantial evidence, including six opinions from state agency consultants who are experts in Social Security disability evaluation .  See *Ealy*, 594 F.3d at 512 ("If the Commissioner's decision is based upon substantial evidence, we must affirm, even if substantial evidence exists in the record supporting a different conclusion.").  In view of all the other countervailing evidence, there is record support for the ALJ's conclusion that Claimant was not markedly impaired in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for self.  Accordingly, Plaintiff's second assignment of error does not present a basis for remand.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*

                    U.S. Magistrate Judge

Date: December 23, 2014